**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeanne Barstad,<br><br>  Plaintiff,<br><br>v.<br><br>Mid States Incorporated, et al.,<br><br>  Defendants. | No. CV-22-08235-PCT-JZB<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 56.) For the reasons discussed below, the Court will grant the motion.

**I.  Summary.**

A nurse brought this civil action under the Rehabilitation Act against a skilled nursing and rehabilitation center alleging she was illegally terminated because of her disability. To state a cognizable claim, she must prove that she has a disability, is qualified for employment with or without reasonable accommodations, and suffered discrimination because of her disability. Defendant seeks summary judgment alleging that Plaintiff cannot make out a *prima facie* case. Defendant also argues there were legitimate, non-discriminatory reasons for Plaintiff's termination—broadly construed as a lack of professionalism. It is undisputed that Plaintiff is disabled and in a wheelchair, but it is unclear as to whether she is qualified to perform essential functions of her job like recruitment and retention. Still, there is no genuine issue of material fact as to the third issue, but-for causation, which is the basis of her termination. Further, Plaintiff cannot

prove Defendant's reason for her termination was pretextual. Therefore, summary judgment is appropriate.

**II.    Background.**

Plaintiff, Jeanne Barstad, brings a disability discrimination suit under the Rehabilitation Act, 29 U.S.C. § 794 (the "Act"). (Doc. 60 at 3.) Defendant, Mid States, Inc. ("Mid States") operates a skilled nursing and rehabilitation center known as Mountain View Manor. (Doc. 57 at 1-2.) Mid States employed Plaintiff as a registered nurse ("RN") beginning in June 2015. (*Id.*) In February 2016, Plaintiff suffered a serious accident resulting in a permanent disability and requiring her to use a wheelchair. (Doc. 57 at 3.) Plaintiff took leave, but in July 2016, returned to Mountain View Manor in a part-time capacity in a different position. (*Id.*) After her injury, Plaintiff requested Defendant lower her mailbox and modify a wheelchair ramp. (Doc. 60 at 5.) Defendant modified the ramp, but it is disputed whether the modifications addressed the problem. (Doc. 61 at 3.) Plaintiff alleges that after "three or four requests to Business Office Manager Jamie Summers ("Ms. Summers") to lower her mailbox[ ]went unanswered, Plaintiff eventually took matters into her own hands and directly asked a maintenance worker to lower the mailbox." (*Id*. at 11.) In December 2016, Plaintiff received verbal counseling for not locking the door to the medical records room. (Doc. 60 at 5.) In February 2017, Plaintiff received a written warning for medical coding errors. (*Id.*) Still, Plaintiff received a positive overall performance review and resulting pay increase on July 26, 2017. (Doc. 57 at 5).

In January 2018, Defendant promoted Plaintiff to the position of Director of Nursing ("DON"). (*Id.*) Patrick Kinney ("Mr. Kinney"), the Director of Regional Consulting, interviewed Plaintiff, approved her salary, and ultimately made the decision to promote her. (*Id.*) The employee Policy Statement, which delineates a DON's duties, provides that a DON is responsible for "[r]ecruiting and retaining the number and levels of nursing personnel necessary to meet the nursing care needs of every resident," among other duties. (Doc. 61-2 at 5.) Plaintiff's October 5, 2018, annual performance evaluation stated that she appeared to be "overwhelmed [at] times," and that she was "on a learning curve." (Doc. 61

at 4.) Still, Plaintiff was offered a salary increase, and the summary of her overall performance stated she was "Exceptional" or "Good." (Doc. 57-1 at 389).

Around February 2020, Defendant assigned Plaintiff to a newly-created position, Assistant Director of Nursing ("ADON"). (Doc. 60 at 4.) Defendant justified the move by explaining Plaintiff "needed additional tutoring or mentoring as a director of nursing." (*Id.* at 5.) Later, around June 2020, Plaintiff was returned to her role as DON. (*Id.*)

Defendant terminated Plaintiff in late December 2020 around the same time an investigation was initiated into a comment Plaintiff made in jest about the need to forge other nurse's signatures ("forgery investigation"). (*Id.* at 6-7.) During November or December 2020, Defendant was struggling with staffing shortages and hired traveling nurses. (*Id.* at 5.) Plaintiff noticed the traveling nurses failed to sign patient medical records. (*Id.*) She jokingly suggested to the Staff Development Coordinator, Ora Roberts ("Ms. Roberts"), that they would need to sign the traveling nurse's signatures to properly complete records. (*Id.* at 6.) After learning of the comment, Defendant suspended Plaintiff pending an investigation. (*Id.*)

The parties disagree on whether Mid States' Business Office Manager, Ms. Summers, coordinated the investigation. Plaintiff alleges that Ms. Summers previously "demonstrated discriminatory animus against Plaintiff" in the Summer of 2020 when, after witnessing a co-worker pushing Plaintiff in her wheelchair, she remarked that Plaintiff did not need to be pushed because she "has two arms." (Doc. 60 at 6.) While Defendant found that Plaintiff's forgery comment was made in jest and did not substantiate any allegations of actual forgery, Defendant still terminated Plaintiff. (Doc. 57 at 11.) Mr. Kinney stated that the termination was "due to the past," not the forgery comment. (*Id.*) At her deposition, Plaintiff testified, "I still to this day do not know why I was fired. And so I just assumed it's the wheelchair." (Doc. 57 at 12; 57-1 at 335.)

Plaintiff alleges, *inter alia*, that Defendant failed to reasonably accommodate her disability, failed to investigate disparaging comments regarding her disability, inappropriately initiated an investigation based upon an unserious remark, and unlawfully

terminated her employment. (*Id*. at 3.)

Defendant denies any disability discrimination (doc. 29) and counters that Plaintiff was terminated for unsatisfactory performance (doc. 19 at 5). Defendant further alleges that Plaintiff called other employees a "bitch," neglected to perform employee evaluations, and gossiped about coworkers, which negatively impacted Defendant's ability to recruit and retain staff—a duty outlined in Plaintiff's job description. (Doc. 56 at 16.) Defendant filed a Motion for Summary Judgment on November 8, 2024. (*Id*. at 1.) Plaintiff responded on December 20, 2024, requesting oral argument (doc. 60 at 1), and Defendant replied on January 10, 2025, also requesting oral argument (doc. 62 at 1).[1]

## III.     Legal Standard.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of showing that no genuine issue of

---

[1] The Court deems the briefing suitable and finds oral argument unnecessary.

material fact exists." *U.S. v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (citations omitted).

### IV.   Plaintiff Did Not Establish a Prima Facie Case Under the Rehabilitation Act.

Under the Act, employers receiving federal financial assistance cannot discriminate against employees with disabilities. *See* 29 U.S.C. § 794(a). The Act specifically adopts the standards set out in the Americans with Disabilities Act of 1990 (codified at 42 U.S.C. § 12111, *et seq.*) to determine whether the Act has been violated. *See id*. § 794(d). To establish a *prima facie* case of disability discrimination under the Act, Plaintiff must establish that: (1) she has a disability, (2) she is qualified and able to perform the essential functions of her job, either with or without reasonable accommodation, and (3) she suffered discrimination because of her disability. *See* 29 U.S.C. § 794(a); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded by statute on other grounds as recognized in Nunies v. HIE Holdings, Inc.*, 908 F.3d 428 (9th Cir. 2018).

Here, it is undisputed that Defendant receives federal funding and is subject to the Act. (Doc. 56 at 2.) Plaintiff is also clearly disabled within the meaning of the Act. (Doc. 60 at 2.) Defendant argues it is entitled to summary judgment because Plaintiff is not qualified to perform the essential functions of her job, nor did she suffer discrimination because of her disability.

#### a.  Whether Plaintiff Is a Qualified Individual.

It is Plaintiff's burden to show whether she is qualified for the position. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (citation omitted). The Ninth Circuit uses a two-step inquiry to make this determination. *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127–29 (9th Cir. 2020) (citing 29 C.F.R. § 1630.2(m)). "The court first examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position. The court then considers whether the individual can perform the essential functions of such position with or without a reasonable

accommodation." *Bates,* 511 F.3d at 990; *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (applying the EEOC's two-step test as adopted in *Bates*).

Defendant argues that Plaintiff fails to show she first had the requisite skill to even perform the job, and that she could not perform the essential functions.

### i. Plaintiff Satisfies Requisite Skill.

The first determination is whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." 29 C.F.R. § 1630.2(m); *Anthony*, 955 F.3d at 1127–29. Defendant states Plaintiff "failed to satisfy the requisite skill and other job-related requirements of her position as the DON," and "failed to develop the necessary qualifications for the position." (Doc. 56 at 12.) But, for this element, courts primarily consider threshold position prerequisites. *See Anthony*, 955 F.3d at 1127–29 (where a bachelor's degree was a prerequisite for the job); *see also Bates*, 511 F.3d at 990 (considering that a package-car driver job requires the applicant to be at least twenty-one years of age and possess a valid driver's license). Plaintiff had nursing experience (even if it was "minimal"), the appropriate licensure, and an Associate Degree in Nursing ("ADN") from Yavapai College. (Doc. 56 at 12; Doc. 57-1 at 370.) Plaintiff satisfies the requisite skill requirement.

### ii. The Job's Essential Functions.

Regardless of Plaintiff's requisite skill, employment protections do not apply "if a disabled person cannot perform a job's essential functions, even with a reasonable accommodation." *Cripe v. City of San Jose*, 261 F.3d 877, 884–85 (9th Cir. 2001) (cleaned up); *Bates*, 511 F.3d at 989. For the reasons stated below, both whether the function at issue is essential, and whether Plaintiff performed it, are questions of fact.

### A. Determining the Essential Functions.

An essential function is a "basic duty" which differs from qualification standards which are professional attributes and physical requirements. *Bates*, 511 F.3d at 990. It is

the employer's burden of establishing what job functions are essential because much of this information "lies uniquely with the employer." *See Samper*, 675 F.3d at 1237; *Bates*, 511 F.3d at 991 ("[A]n employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions."). Consideration is given to the "employer's judgment" and "if an employer has prepared a written description before advertising or interviewing applicants for the job." *Cripe*, 261 F.3d at 887. Other factors in determining essential duties, adopted from the U.S. Equal Employment Opportunity Commission, include the amount of time spent at the job performing the function; an incumbent's responsibility; bargaining agreements; work experience of past incumbents; and current work of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(2); *Zehnder v. Mayo Clinic*, No. CV-23-00355-PHX-DJH, 2024 WL 4364152, at *6 (D. Ariz. Sept. 30, 2024).

In the context of summary judgment, however, "[a]n employer's assertions regarding what it considers an essential function of the job 'does not qualify as an undisputed statement of fact.'" *Reese v. Barton Healthcare Sys.*, 693 F. Supp. 2d 1170, 1182 (E.D. Cal. 2010) (quoting *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175 n. 6 (9th Cir. 1998)). If there is a conflict in the evidence, there is a factual dispute. *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009). To create a genuine factual dispute Plaintiff "must point to admissible evidence in conflict with the evidence Defendant[] relied on." *Coleman v. Home Health Res. Inc.*, 269 F. Supp. 3d 935, 947 (D. Ariz. 2017) ("[D]enying a fact without specific competing evidence is insufficient to defeat summary judgment."); *see* Fed. R. Civ. P. 56(a).

Defendant states that the essential functions of the DON job include "[r]ecruiting and retaining the number and levels of nursing personnel necessary to meet the nursing care needs of each resident." (Doc. 60 at 10-11.) Defendant testified this is an essential function and presented its inclusion in the Director of Nursing Services Policy Statement ("DON Policy Statement"). (Doc. 61-2 at 5.)

On the other hand, Plaintiff disputes that recruitment and retention was an essential

function for two reasons. First, on August 3, 2020, Mr. Kinney sent Plaintiff a recruitment email stating that Administrator Michael Phillips ("Mr. Phillips") "will take the lead" on staff recruitment and retention. (*Id.* at 4.) Second, Mr. Kinney also testified that Mr. Phillips would lead the recruitment process. (Doc. 60 at 10.) As Defendant pointed out, however, Mr. Kinney also wrote in the same recruitment email that Plaintiff would have a "role in both recruitment and retention." (*Id.*) Plaintiff further acknowledged her responsibility to perform this role in an email response on August 4, 2020. (Doc. 61-4 at 2.) Thus, the parties do not disagree that Plaintiff had a role in recruitment and retention. Rather, the question is whether her role here is significant enough to be considered essential. Although the Court considers the employer's evidence to be persuasive, particularly the DON Policy Statement, there is specific competing evidence illustrating a conflict between the administrator's role and the scope of Plaintiff's responsibilities. Thus, there is a question of fact.

**B. Plaintiff's Performance of Essential Functions.**

Once the essential functions are determined, the burden falls on the employee to demonstrate they can perform them with or without accommodation. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). "To avoid summary judgment, [an employee] 'need only show that an "accommodation" seems reasonable on its face, *i.e.*, ordinarily or in the run of cases.'" *Dark v. Curry County,* 451 F.3d 1078, 1088 (9th Cir. 2006) (emphasis omitted) (quoting *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 401–02, (2002)). This inquiry is often intertwined with whether the accommodation would not impose an "undue hardship on the employer." *Cripe*, 261 F.3d at 885 n.7 (citation omitted). Ultimately an employee is not qualified if they remain "consistently deficient" even with reasonable accommodations. *Kendall v. Mukasey*, 282 F. App'x 527, 529 (9th Cir. 2008); *see also Braunling v. Countrywide Home Loans Inc*., 220 F.3d 1154, 1157–58 (9th Cir. 2000) (ruling an employee was not qualified if they have substandard performance regardless of accommodations). Nor is it required for the employer to reallocate such essential functions to other employees. *See Dark*, 451 F.3d at 1089.

1    Here, it is Plaintiff's burden to show she could perform the essential recruitment and retention functions. First, Plaintiff noted the 2018 written performance evaluation, which stated she managed the staff well. (Doc. 57-1 at 389.) Defendant disputes this, however, arguing that Plaintiff's "strained and poor relationships" impacted those functions. (Doc. 62 at 4.) Defendant presents evidence that Plaintiff had personality conflicts with multiple employees, used profane language, gossiped, and failed to complete timely employee evaluations. (*Id*.) Plaintiff responded arguing Defendant's allegations were not "specific." (Doc. 60 at 10.)

Second, Plaintiff argues that she responded appropriately to her recruitment responsibilities, citing an email from Mr. Kinney. In his testimony, Mr. Kinney said that Plaintiff responded "correctly or in a positive manner" to his email on recruitment and retention efforts. (Doc. 60 at 10.) Defendant argues, however, that Plaintiff mischaracterized the recruitment email, instead saying she also "certainly [had] a role in both recruitment and retention." (Doc. 62 at 4.) Thus, there is also a factual dispute over the email that needs to be addressed.

Third, Plaintiff alleges that, during the time she was demoted to ADON, Defendant still struggled with recruitment and retention. (Doc. 60 at 10.) But under *Dark*, the employer is not required to reallocate functions to other employees, in this case the new DON. Therefore, this element cannot be decided on summary judgment.

### b. Discrimination Because Of a Disability.

Discrimination claims are evaluated under a but-for causation standard. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019). "An unlawful discharge claim requires a showing that the employer terminated the employee because of [her] disability." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) (holding plaintiff "presented sufficient evidence to create a triable issue of fact as to whether her attendance problems were caused by OCD."); *see also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) ("[T]here is no discrimination under the Act where disabled individuals are given the same opportunity as everyone else.").

However, a plaintiff's "mere speculation, without more, that [she was] discharged because [of her protected class] is insufficient to rise to the level of direct evidence and overcome summary judgment." *Hawn v. Executive Jet Mgmt., Inc.*, 546 F. Supp. 2d 703, 715 (D. Ariz. 2008), *aff'd*, 615 F.3d 1151 (9th Cir. 2010) (finding there was no evidence that the decisionmaker considered plaintiffs' sex, race, or national origin in their termination for sexual harassment, despite plaintiffs' "mere speculation" they would not have been discharged if non-Caucasian, female, or non-American). It is established that "[r]eliance on mere speculation, conjecture, or fantasy cannot defeat a motion for summary judgment." *Villodas v. HealthSouth Corp.*, 338 F. Supp.2d 1096, 1103-05 (D. Ariz. 2004) (finding that an employee alleging age discrimination could not raise specific facts—only credibility issues—as to whether the employer responsible for her termination knew her age); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("Her claim that she did one thing, and subsequently the other thing happened to her, is, in the factual context of this case, insufficient to allow [the retaliation] inference." . . . "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Additionally, a court is under no obligation to "scour" the record in search of a genuine issue of triable fact. *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (it is not the court's task to scour the record in search of a genuine issue of triable fact; the court relies on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.)

Here, Plaintiff merely speculates that Defendant terminated her because of her disability. Plaintiff testified, "I still to this day do not know why I was fired. And so, I just assumed it's the wheelchair." (Doc. 57 at 12.) Speculation in and of itself is not sufficient to establish a *prima facie* case. *See, e.g.*, *Hawn*, 546 F. Supp. 2d at 715; *Villodas*, 338 F. Supp. 2d at 1104-05; *Nelson*, 83 F.3d 1075, 1081–82 ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Like the employee in *Villodas*, Plaintiff fails to present specific facts demonstrating that Defendant terminated her due to her disability. (*See* Doc. 60 at 11.) The only relevant evidence she presents is

her speculative testimony. (*Id.*)

Plaintiff attempts to overcome this by arguing that there is no objective evidence at this stage to contradict her statements, and Defendant has not presented any. (*Id.*) Plaintiff cites her 2018 performance evaluation wherein she was rated between "good" and "exceptional."[2] (*Id.*) However, the mere existence of a positive evaluation predating Plaintiff's discharge by *two years* does not establish a connection between her termination and her disability. *See Nelson*, 83 F.3d at 1081-82 (where Plaintiff's claim that she did one thing, *i.e.*, criticized her employer's affirmative action program, and subsequently another thing happened, *i.e.*, she was discharged, was insufficient). This is not relevant direct evidence. *C.f. Hawn*, 546 F. Supp. 2d at 715 (Plaintiff's allegation that the CEO wanted to know an employee's protected status before making a discharge determination did not constitute evidence that the CEO actually had that information or considered it, and was, therefore, "insufficient to rise to the level of direct evidence and overcome summary judgment."). To the contrary, Defendant offers undisputed direct evidence that they not only hired her but promoted her with full knowledge of her disability between 2016 and 2020. (Doc. 62 at 5.)

Because Plaintiff cannot establish but-for causation between her disability and her discharge based on speculation alone, summary judgment should be granted. The court is not required to scour the record to find a triable issue of fact on causation. *See Keenan*, 91 F.3d at 1279. Without establishing causation, Plaintiff cannot state a complete *prima facie* case and, consequently, summary judgment must be granted.

V.      **Analysis of Defendant's Non-Discriminatory Reason for its Actions.**

Even if Plaintiff could make a *prima facie* case, summary judgment would still be appropriate because Plaintiff cannot prove Defendant's stated nondiscriminatory reason for terminating Plaintiff's employment was mere pretext for disability discrimination.

After Plaintiff makes the *prima facie* case, the burden shifts to Defendant to provide

---

[2] Whether the evaluation showed Plaintiff in a positive or negative way is disputed. (Doc. 57 at 6; Doc. 61 at 4.) However, if viewed in the light most favorable to the Plaintiff, it can be construed as positive.

- 11 -

a legitimate nondiscriminatory reason for terminating employment. *Mattioda v. Nelson*, 98 F.4th 1164, 1178 (9th Cir. 2024); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Poor performance can be a legitimate reason for termination. *See Swan v. Bank of Am.*, 360 Fed. App'x. 903, 905 (9th Cir. 2009); *Phillips v. PacifiCorp*, 304 F. App'x 527, 530 (9th Cir. 2008); *Jilka v. Drivetime Auto. Grp., Inc.*, 234 F. App'x 524 (9th Cir. 2007). Poor performance can range from the use of profanity in the workplace to complaints from coworkers or missing deadlines. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) (considering poor job performance to be a legitimate nondiscriminatory reason for termination when Plaintiff was slow at picking up trash and said during a shift "put a fork in me, I'm done"); *Willie v. Nevada, ex rel. Nevada Dept. of Pub. Safety*, 234 Fed. Appx. 449, 451 (9th Cir. 2007) (holding employer had legitimate nondiscriminatory reasons for dismissal including "insubordination, use of profanity, falsification of time sheets . . ."); *Hughes v. Principi*, 2005 WL 894827, at *7 (N.D. Cal. Apr. 18, 2005) (citing the plaintiff calling "another co-worker a 'bitch' or witch'" as among the legitimate, nondiscriminatory reasons for termination).

This Court often relies on documentation for poor performance. *See e.g.*, *Coleman v. Home Health Res. Inc.*, 269 F. Supp. 3d 935, 946 (D. Ariz. 2017) ("[d]efendants offer a sensible reason for giving Coleman poor performance reviews, admonishing her, and ultimately terminating her employment . . .[,]" pointing to several specific instances of poor performance documented in her personnel file and a report created by an independent consultant documenting performance deficiencies); *Willie*, 234 F. App'x at 451 ("[t]hese incidents are documented in the record and cited by the Hearing Officer as reasons for Willie's termination"); *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1130 (S.D. Cal. 2007) (holding poor performance was a legitimate, non-discriminatory reason for termination where employer produced multiple written performance reviews showing progressively worsening performance and approximately 30 contemporaneous emails detailing plaintiff's errors).

Still, the court can consider deposition testimony "on summary judgment as long as

the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence." *See Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (even "uncorroborated and self-serving" declarations are considered during summary judgment); *see also* Fed. R. Civ. P. 56(c)(4). However, the Court may not engage in "credibility determinations" at this stage. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Inadmissible hearsay may not be considered at summary-judgment. Fed R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs.*, Inc., 854 F.2d 1179, 1182 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.").

Here, Defendant offered several legitimate, non-discriminatory reasons for terminating Plaintiff. Defendant alleges that Plaintiff acted unprofessionally, gossiped, showed favoritism, and used profanity by calling employees a "bitch" and the facility a "shit show." (Doc. 56 at 16.) Defendant stated that this behavior negatively impacted Defendant's ability to retain staff. (*Id.*) Additionally, Defendant found that she failed to meet job demands by neglecting employee evaluations. (*Id.*) These concerns were all documented in an email on November 19, 2020, between Mr. Kinney and Kitty Fraire ("Ms. Fraire"), the Regional Nurse Consultant. (Doc. 57-1 at 428-429.) Plaintiff acknowledges that there were staffing shortages in the nursing department. (Doc. 61 at 4.) She also testified to using the word "bitch" while at work, referencing coworkers. (Doc. 57-1 at 340-41.) Plaintiff further agreed that some employees did not receive their evaluations on time. (Doc. 61 at 13.)

In her response, Plaintiff alleges that Defendant's above allegations "lack specificity, foundation, and contain inadmissible hearsay" because Mr. Kinney and Mr. Phillips could not remember the names of who complained or the specific incidents. (Doc. 60 at 13.) Therefore, according to Plaintiff, they did not necessarily have the requisite "personal knowledge." Thus, Plaintiff raises a question of credibility. With potentially inadmissible hearsay, this issue cannot be determined at the summary judgment stage. But, as previously noted, Plaintiff testified to using profanity in the workplace and

acknowledged untimely performance evaluations. Her admissions take these matters out of dispute. Defendants have stated legitimate, non-discriminatory reasons for discharging Plaintiff.

**VI.     Defendant's Employment Decision Was Not Pretext.**

To prevail after a defendant articulates a legitimate nondiscriminatory reason for its employment decision, a plaintiff must demonstrate that the "alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). Plaintiff's burden is "especially steep" when the same actor is responsible for both hiring and firing plaintiff within a short period of time known as the "same actor inference." *Coghlan v. Am. Seafoods Co. LLC*., 413 F.3d 1090, 1094 (9th Cir. 2005). However, the presumption against nondiscrimination may not apply if multiple actors are involved. *Coburn v. PN II, Inc.*, 372 Fed. Appx. 796, 799 (9th Cir. 2010) (holding the same-actor inference did not apply when the decision maker was not the employee's direct supervisor, and only a participant in the hiring and firing of the employee); *see also Hargrave v. Univ. of Washington*, 113 F. Supp. 3d 1085, 1097 (W.D. Wash. 2015) (holding the same-actor inference was inapplicable when there was no indication how defendants voted in the hiring and reappointment decisions of a university professor, and the rest of the faculty involved in decision likely changed over six intervening years). There is no clear test as to what constitutes a short amount of time; cases range from eight days to four years. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) (8 days); *Bradley v. Harcourt Brace & Co.*, 104 F.3d 267, 269 (9th Cir. 1996) (11 months); *Coburn*, 372 Fed. App'x at 799 (2 years); *Brown v. CSC Logic, Inc*., 82 F.3d at 658 (4 years).

If there is a biased subordinate, however, and they are not the principal decisionmaker, "the biased subordinate's [ ] motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision." *Poland v. Chertoff,* 494 F.3d 1174, 1183 (9th Cir. 2007) (citations omitted). But a plaintiff must "show that the allegedly independent adverse employment decision was

not actually independent because the biased subordinate influenced or was involved in the decision." *Id.,* at 1182–83 (citations omitted).

In circumstances when there is nothing but "pure speculation" that an employee who made a discriminatory remark was involved in the decision to terminate, summary judgment is appropriate. *See De Horney v. Bank of America Nat'l. Trust & Sav. Assoc.*, 879 F.2d 459, 467 (9th Cir.1989) (ruling on summary judgement that the bank teller failed to demonstrate racial bias in her termination, even though the final decision-maker reviewed a report from an internal auditor who had previously made an allegedly discriminatory remark); *see also Cornelio v. Wasserman*, No. CV-10-2023-PHX-GMS, 2012 WL 3028344, at *3 (D. Ariz. July 24, 2012) (holding that an "uncorroborated and self-serving statement, made without foundation, does not constitute admissible evidence contradicting [the manager's] testimony that his decision was made independently of [an allegedly discriminatory subordinate employee's] influence").

Plaintiff's burden is especially steep here because the same actor inference applies. Both parties agree that Mr. Kinney was the principal decision maker who both hired and terminated Plaintiff. (Doc. 56 at 17; Doc. 57 at 11; Doc. 60 at 14.) Even after Plaintiff became disabled; Mr. Kinney still chose to promote her to DON and offer a subsequent raise. (Doc. 62 at 9.) The parties also agree that the only supervisors who influenced Plaintiff's termination were Mr. Philips and Ms. Fraire (not Ms. Summers). (Doc. 57 at 11; Doc. 60 at 14.) The evidence does not show that these two supervisors harbored any discriminatory animus toward Plaintiff.

Rather, Plaintiff's pretextual concern arises over the possibility that Mr. Phillips *could* have delegated part of the forgery investigation to Ms. Summers. (*Id.*) Defendant, however, disputes that Ms. Summers had any involvement "in the coordination of the investigation," but "[s]he could have been a witness." (Doc. 62 at 10.)

First, Ms. Summers' involvement in coordinating the investigation is nothing but "pure speculation." *De Horney*, 879 F.2d at 467. *Cornelio* is persuasive here. *See Cornelio*, 2012 WL 3028344, at *3. Like the *Cornelio* employee who made an uncorroborated and

self-serving statement, Plaintiff's allegations over Ms. Summer's involvement are uncorroborated and self-serving. (*Id.*) Plaintiff did not provide any evidence regarding Ms. Summer's actual involvement in the investigation, only that one of the supervisors, Mr. Phillips, had the "authority to delegate parts of disciplinary investigations to others." (Doc. 60 at 14.) This is merely a summary of Mr. Phillips' managerial powers. Plus, Plaintiff does not offer any evidence to show that Ms. Summers influenced Mr. Phillips, who in turn then influenced Mr. Kinney. This chain of influence is remote, and thus, less persuasive.

Second, Plaintiff cannot sufficiently show a tie between the forgery investigation and her termination. When viewed in a light most favorable to Plaintiff, the only compelling factor is the timing between the two events. (Doc. 57 at 9-12.) Instead, the evidence shows the decision was not pretextual. (Doc. 57-1 at 428-429; Doc. 60 at 7.) For instance, both parties agree that the forgery allegations were found to be unsubstantiated. (Doc. 60 at 7.) Plus, the November 19th email between Mr. Kinney and Ms. Fraire raised many of the Plaintiff's legitimate workplace shortcomings (which she conceded to) and provided a basis for her termination. (Doc. 57-1 at 340-38, 428-429; Doc. 61 at 13.)

For the reasons above, Plaintiff did not meet her steep burden. She only speculates that Ms. Summers was involved in the forgery investigation, and further makes an unsupported assumption that the investigation was tied to her termination. Therefore, there is no triable issue of fact here.

//
//
//
//
//
//
//
//
//

### VII. Conclusion.

In sum, the Court will grant the motion for summary judgement.

Accordingly,

**IT IS ORDERED** Defendants' Motion for Summary Judgement (doc. 56) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendants John and Jane Does I-V and XYZ Corporations, are hereby dismissed from this lawsuit.

**IT IS FURTHER ORDERED** this action is terminated for the reasons set forth herein. The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 8th day of May, 2025.

Honorable John Z. Boyle
United States Magistrate Judge